FREDERICKA HOMBERG WICKER, Judge.
|2Pefendant, Jules Robertson, was convicted of second degree murder and attempted second degree murder. The sole error assigned on appeal is that the evidence presented at trial was not sufficient to support the convictions. Upon review of the record, we find the evidence sufficient and affirm the convictions.

PROCEDURAL HISTORY

On April 6, 2009, a St. John the Baptist Parish grand jury issued an indictment charging defendant, Jules Robertson, with first degree murder in violation of La. R.S. 14:30. Subsequently, the state amended the indictment reducing the charge to second degree murder of Nekeshia Joseph in violation of La. R.S. 14:30.1. On February 7, 2011, the state again amended the indictment to add a separate charge of attempted second degree murder of Ron James in violation of La. R.S. 14:27:30.1. On February 9, 2011, defendant was arraigned and pled not guilty to both charges. The matter proceeded to trial by jury on February 15, 2011. On February 18, 2011, the jury returned a verdict of guilty as charged.[1] Defendant filed a motion for post-verdict judgment of acquittal and a motion for new trial, which were denied by the trial court. On April 18, 2011, defendant was sentenced to life imprisonment at hard labor without benefit of 1 ..¡probation, parole, or suspension of sen-fence on count one, second degree murder. As to count three, attempted second degree murder, defendant was sentenced to twenty-five years imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. The sentences were imposed concurrently. On April 19, 2011, the trial court granted defendant’s motion for appeal.

ASSIGNMENT OF ERROR

Defendant’s sole assignment of error on appeal is that the evidence presented at trial was not sufficient to support the convictions. Specifically, defendant argues the evidence concerning identification was insufficient to identify him as the perpetrator of the crimes.

DISCUSSION

On December 30, 2008, at approximately 12:40 a.m., Ron James and Nekeshia Joseph were sitting inside Mr. James’ parked vehicle on East Twenty-Fourth Street in Reserve, Louisiana, when two hooded men on foot approached and subsequently began shooting into the vehicle. Nekeshia Joseph suffered fatal bullet wounds and was declared dead on the scene. Ron James was shot in the leg but drove away from the scene and contacted police.
At trial, Mr. James testified that he knew at the time of the shooting the identity of the hooded man who approached the driver’s side window with a gun. He immediately identified by photographic lineup co-defendant Calvin Mitchell as the subject who approached the driver’s side of his vehicle and testified that he knew Mr. Mitchell, “like family.” According to Mr. James, Mitchell approached the driver’s side of the vehicle, put a gun to the window and said “Give it up.” Mr. James *404 testified that he heard Mitchell say to the subject on the passenger side window, “Duty, that’s Chill.” Mr. James’ nickname is Chill. Immediately thereafter, the subject on the passenger side began shooting into the vehicle.
14At trial, Mr. James identified defendant, Jules Robertson, as the subject who approached and shot from the passenger side of the vehicle. In his testimony, Mr. James acknowledged that he initially identified Terrel Hutchinson, a cousin of the defendant, as the subject who approached and shot from the passenger side of the vehicle. However, Mr. James testified and explained that he initially identified Hutchinson because he knew Hutchinson had a cousin named “Duty.” He further explained his thought process in identifying Hutchinson by stating, “if we find him, we going to find Duty.” Mr. James insisted that Hutchinson was not the subject who shot into the passenger side of his vehicle; he further noted that he initially reported the subject on the passenger side had dreadlocks and that Hutchinson does not have dreadlocks. Mr. James identified defendant at trial as the subject who shot into the passenger side of the vehicle and further noted that defendant has dreadlocks and goes by the nickname “Duty.”
The testimony reveals that on December 29, 2008, defendant and his cousins, Craig Cain, Kyron Cain, and co-defendant Calvin Mitchell, went to the Cains’ home to play basketball. Lacheon Watson, a family friend, was also present. The five men played basketball together before heading to Rusty’s pool hall around 8:00 p.m. La-cheon Watson testified that he, defendant, and co-defendant Mitchell drank alcohol and smoked marijuana at Rusty’s pool hall. The statement of Kyron Cain and the testimony of Lacheon Watson and Craig Cain reflect that a few hours later the group left Rusty’s pool hall and drove to defendant’s home. Defendant and Mitchell exited the vehicle and the other three men waited in the car. After returning to the vehicle, defendant instructed Craig Cain to drive to Reserve, Louisiana for the purpose of purchasing marijuana. Craig Cain testified that during the drive defendant made a comment that he was “going to pop somebody” and that he did not like people from Reserve. The testimony Vindicates that, after driving on Twenty-Fourth Street and circling the corner to a parallel street, defendant and Mitchell told Craig Cain to stop the vehicle. Defendant and Mitchell exited the vehicle and proceeded on foot through a cut-through to Twenty-Fourth Street. Minutes later the three men who remained in the vehicle heard multiple gunshots; soon thereafter, defendant and Mitchell returned to the vehicle. Craig Cain testified that during that drive to defendant’s home, defendant commented “I think that was a girl.” Craig Cain’s testimony and Kyron Cain’s statement to detectives reveal that, upon returning to defendant’s home, they followed defendant and Mitchell into a back bedroom at which time Mitchell placed a 9 mm handgun on the bed and defendant placed a .45 caliber handgun on the bed.[2]
Hutchinson, defendant’s cousin who was initially identified by Mr. James, also testified at trial. Hutchinson testified that defendant and Mitchell later admitted to him that they were involved in the shooting. Hutchinson testified that defendant and Mitchell told him “they was high” and they “shot up” a car parked on the road on Twenty-Fourth Street. Hutchinson further testified that defendant said he went *405 to the passenger side of the vehicle with a .45 caliber handgun and Mitchell went to the driver’s side of the vehicle with a 9 mm handgun.
Pat Lane, an expert accepted in the fields of firearms examination and ballistics, testified that the cartridge casings recovered from the scene were fired from nine millimeter and forty-five caliber handguns. Mitchell[3], in a recorded statement to detectives, admitted that he fired the 9 mm handgun from the driver’s side of the vehicle. The four bullets retrieved from Nekeshia Joseph’s body were submitted for testing and determined to be fired from a forty-five caliber handgun shot from the passenger side of the vehicle.
| JLAW AND ANALYSIS
Defendant’s sole assignment of error on appeal is that the evidence presented at trial was insufficient to support his convictions of second degree murder and attempted second degree murder. In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial or a mixture or both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of a crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649, 657, cert, denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002); State v. Mickel, 09-953 p. 4 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La.1/7/11), 52 So.3d 885. Under the Jackson standard, a review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at trial established guilt beyond a reasonable doubt. State v. Jones, 08-20, p. 6 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. Id., 08-20 at 7, 985 So.2d at 240.
In this case, defendant was found guilty of second degree murder and attempted second degree murder. Second degree murder is the killing of a human being when the offender has specific intent to kill or inflict great bodily harm. State v. Martinez, 09-740, p. 10 (La.App. 5 Cir. 3/23/10), 38 So.3d 926, 931; La. R.S. 14:30.1. Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. Martinez, 09-740 at 10, 38 So.3d at 932. Specific criminal intent, as a state of mind, need not be proven as fact but may |7be inferred from the circumstances and the actions of the accused. Id. Specific intent to kill may be inferred from a defendant’s act of pointing a gun and firing in the direction of the victim. State v. Jackson, 03-883, p. 13 (La.App. 5 Cir. 4/27/04), 880 So.2d 841, 850, writ denied, 04-1399 (La.11/8/04), 885 So.2d 1118 (citation omitted). In State v. Gonzalez, 07-449, p. 2 (La.App. 5 Cir. 12/27/07), 975 So.2d 3, 5, writ denied, 08-0228 (La.9/19/08), 992 So.2d 949, this Court found the evidence was sufficient to support a conviction of second degree murder when the defendant fired three shots in the direction of three fleeing men who had just robbed the defendant during a drug transaction. Id., 07-449 at 9, 975 So.2d at 8. This Court concluded that, “the act of aiming a lethal weapon and discharging it in the direction of the victim supports a finding by the *406 trier of fact that the defendant acted with specific intent to kill.” Id.
In the instant case, the testimony and evidence indicates that defendant was at or near the scene of the shooting and was armed with a .45 caliber handgun. The police investigation determined that two weapons were used in the crime: a .45 caliber handgun and a 9 mm handgun. Co-defendant Mitchell, in a recorded statement to detectives, admitted that he possessed and discharged the 9 mm weapon. Craig Cain testified that he observed defendant place a .45 caliber weapon on the bed and Mitchell place a 9 mm weapon on the bed shortly after the shooting. Further, Hutchinson testified that defendant later admitted to him that he possessed and shot a .45 caliber weapon during the shooting. Patrick Lane of the Louisiana State Police Crime Lab, qualified as an expert in firearms identification, testified that he identified seven bullets recovered from the scene as .45 caliber projectiles. Thus, the evidence supports a conclusion that defendant possessed a .45 caliber handgun and discharged it seven times at the vehicle in which Nekeshia Joseph was a passenger.
| ^Considering the above jurisprudence and the evidence presented that defendant aimed a lethal weapon at a vehicle containing two occupants and discharged it seven times, the finding of the trier of fact that defendant acted with specific intent to kill or inflict great bodily harm is supported. Accordingly, the record contains sufficient evidencé to support defendant’s conviction of second degree murder of Nekeshia Joseph.
As to the conviction of attempted second degree murder of Ron James, a similar analysis applies. To prove attempted second degree murder, the state must establish beyond a reasonable doubt that the defendant specifically intended to kill a human being and that he committed an overt act in furtherance of that goal. Id., 09-740 at 10, 38 So.3d at 932. As discussed above, specific intent to kill may be inferred from a defendant’s act of pointing a. gun and firing at a person. Jackson, 03-883 at 13, 880 So.2d at 850. In this case, the evidence supports a finding that defendant aimed a lethal weapon at a vehicle containing two occupants and discharged it at least seven times. Accordingly, the evidence in this case is sufficient to support a conviction of attempted second degree murder of the other occupant of the vehicle, Ron James.
The thrust of defendant’s argument concerns identity. Defendant argues that the state failed to identity him as having been involved in the crimes; he contends that his cousin, Terrel Hutchinson, is responsible for the murder of Nekeshia Johnson and the attempted murder of Ron James. In support of his contention, defendant points to the fact that Mr. James initially identified by photographic lineup Terrel Hutchinson as the subject who approached the vehicle and shot from the passenger side. However, at trial, Mr. James identified defendant as the subject who approached the vehicle and shot from the passenger side. Mr. James further explained that he initially identified Hutchinson because he knew Hutchinson | awould lead investigators to the 'actual perpetrator, Hutchinson’s cousin named “Duty.” Mr. James insisted Hutchinson was not involved in the shooting and identified defendant as the perpetrator at trial.
Further, Hutchinson testified at trial that defendant and Mitchell admitted to him their involvement in the December 30, 2008, shooting. Hutchinson further testified that, on the night of the shooting, he was with his girlfriend celebrating her birthday; that testimony was confirmed by *407 the girlfriend, Vanessa Harding, who also testified at trial.
Defendant points out inconsistencies in the testimony of Terrel Hutchinson, Craig and Kyron Cain, and Lacheon Watson and attacks the credibility of their statements. The trier of fact can accept or reject, in whole or in part, the testimony of any witness. State v. Caffrey, 08-717, p. 5 (La.App. 5 Cir. 5/12/09), 15 So.3d 198, 202, writ denied, 09-1305 (La.2/5/10), 27 So.3d 297. It is not the appellate court’s function to re-evaluate the credibility of witnesses or reweigh the evidence. Id., OS-717 at 4,15 So .3d at 202.
In the instant case, despite some inconsistencies in the testimony, the jury heard testimony from all the witnesses, reviewed all the evidence, and concluded that defendant was the gunman on the passenger side of the vehicle during the shooting. Three individuals testified that they were with defendant and co-defendant on the night in question. They each observed defendant walk toward Twenty-Fourth Street and each heard gunshots minutes later. Craig Cain and Kyron Cain each admitted that he saw defendant in possession of a .45 caliber handgun shortly after the shooting. The surviving victim, Mr. James, testified that moments before the shooting he heard Mitchell refer to his accomplice as “Duty,” which is defendant’s nickname. Although Mr. James initially identified Terrel Hutchinson as the gunman on the passenger side, he retracted that identification at Imtrial with explanation and identified defendant as the passenger side subject. Further, Hutchinson testified at trial that defendant and co-defendant Mitchell admitted to him their involvement in the shooting. Viewing the record as a whole and the evidence in the light most favorable to the prosecution, a finding by the trier of fact that defendant was the passenger side gunman in the murder of Nekeshia Joseph and the attempted murder of Ron James is fully supported by the evidence presented at trial.

ERRORS PATENT DISCUSSION

The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The review reveals no errors patent in this case.
Accordingly, for the reasons discussed above, defendant’s convictions of second degree murder of Nekeshia Joseph and attempted second degree murder of Ron James are affirmed.

AFFIRMED

. Co-defendant, Calvin Mitchell, was also found guilty of second degree murder of Nekeshia Joseph and attempted second degree murder of Ron James.

. Lacheon Watson, the friend of the family, testified that he did not walk to the back bedroom of the house.

. Mitchell did not testify at trial.